UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHOI NGUYEN, on behalf of himself, and all others similarly situated,<br><br>                 Plaintiff,<br><br>   v.<br><br>CREDIT CONTROL, LLC,<br><br>                 Defendant. | Case No. 16-cv-2805 DMS (MDD)<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND FOR STAY OF ACTION PENDING ARBITRATION** |

Plaintiff Khoi Nguyen brings a putative class action for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 632.7. Defendant Credit Control, LLC moves to compel arbitration of the parties' disputes, including threshold questions regarding the enforceability and scope of the arbitration provision. For the following reasons, the Court grants Defendant's motion and stays further proceedings pending arbitration.

## I.
## BACKGROUND

Plaintiff's dispute arises out of telephone calls made by Defendant for purposes of collecting debts on three student loans obtained by Trinity Nguyen from

Citibank, N.A. From 2006 to 2008, Plaintiff electronically co-signed and submitted three online applications for student loans on behalf of Ms. Nguyen.[1] (Declaration of Timothy House ("House Decl.") ¶ 3.) The loans were approved and funded, and thereafter, Plaintiff defaulted on the loans. On August 25, 2016, Citibank assigned the three loans to Defendant for collection. (*Id.* ¶ 10.) On September 7, 2016, Defendant called Plaintiff on his cellular phone in an attempt to collect the debt on the loans. (Compl. ¶ 21.) Plaintiff informed Defendant that he was represented by an attorney, Daniel G. Shay, and directed Defendant to contact Mr. Shay. (*Id.*) One day later, Mr. Shay sent a cease and desist letter to Defendant on behalf of Plaintiff, revoking Plaintiff's consent to receive any calls on his cellular phone. (*Id.* ¶ 22.) Nevertheless, Defendant allegedly called Plaintiff three more times using an automatic telephone dialing system over the course of the next several weeks. (*Id.* ¶¶ 23–25.) Plaintiff alleges such conduct constituted violations of the TCPA and CIPA. (*Id.* ¶ 3.)

Prior to submitting each loan application, Plaintiff was required to review a promissory note and agree to the terms and conditions governing the electronic submission of the application. (*Id.* ¶ 6, Exs. 1-A, 1-B, 1-C.) Moreover, in the signature section of each application, Plaintiff was reminded to "**read [his] enclosed Promissory Note in its entirety before signing this section.**" (*Id.*) The promissory note contained an arbitration provision, which appears in a section labeled "**ARBITRATION OF DISPUTES**" and includes the following language:

> PLEASE READ THIS ARBITRATION PROVISION CAREFULLY. IT PROVIDES THAT EITHER YOU OR I CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY

---

[1] Specifically, Plaintiff co-signed the first application for student loans in the amount of $15,000 on September 15, 2006. (House Decl. ¶ 3, Ex. 1-A.) Then, on August 20, 2007, Plaintiff co-signed a second application for student loans in the amount of $16,000. (*Id.*, Ex. 1-B.) Finally, Plaintiff co-signed the last application for student loans in the amount of $14,500 on July 15, 2008. (*Id.*, Ex. 1-C.)

> BINDING ARBITRATION (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.
>
> …
>
> **ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the loan application and Note, you and I further agree as follows:
>
> **Agreement to arbitrate:** You and I agree that either you or I may, without the other's consent, require that any Claims between you and me be submitted to mandatory, binding arbitration except for certain matters excluded below. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the State law governing this transaction.

(House Decl. ¶ 9, Exs. 5-A, 5-B, 5-C.)  The arbitration provision defines "Claims" encompassed by the agreement as follows:

> **Definitions.** As used in this arbitration provision, the following definitions will apply:
> • "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit or claim now or hereafter existing between you and me arising out of or in connection with my loan.
>
> …
>
> **Claims subject to Arbitration include, but are not limited to:**
> • *Claims relating to*: 1) any and all aspects of my Account including without limitation the origination, establishment, terms, treatment, operation, handling, billing, servicing, limitations on or termination or acceleration of my Account; 2) any disclosures or statements relating to my Account; 3) *the application, enforceability or interpretation of*

*my Account, including this arbitration provision.* Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.
• Claims made directly by me as well as Claims made by anyone connected with me or claiming through me, such as a co-applicant or co-signer on my Account, my agent, representative or heirs, or a trustee in bankruptcy. Similarly, Claims subject to arbitration include not only Claims that relate directly to you, a parent company, affiliated company and any predecessors and successors and assigns (and the employees, officers and directors of all of these entities), but also Claims for which you may be directly or indirectly liable, even if you are not properly named at the time the Claim is made.

(*Id.*) (italics added).

The promissory note also included a choice of law provision. The 2006 promissory note is governed by federal and New York laws, and the 2007 and 2008 promissory notes are governed by federal and Nevada laws. (House Decl. ¶ 9, Exs. 5-A, 5-B, 5-C.)

## II.
## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governs the enforcement of arbitration agreements involving interstate commerce.[2] *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308–09 (2013). "The overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

---

[2] The parties do not dispute the promissory notes evidence transactions involving interstate commerce.

213, 218 (1985)).

"The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). "Moreover, the scope of an arbitration clause must be interpreted liberally and 'as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration.'" *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). In determining whether to compel arbitration, a court must determine two "gateway" issues: "'(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore*, 673 F.3d at 955–56 (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If both requirements are satisfied, "'the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.'" *Id*.

The FAA, as federal substantive law, "preempts contrary state law" pursuant to the Supremacy Clause of the United States Constitution. *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013) (citations omitted); *see also* U.S. Const. art. VI, cl. 2. The FAA, however, does not require enforcement of arbitration agreements that may be invalidated on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Concepcion*, 563 U.S. at 339–42. This "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability[.]'" *Concepcion*, 563 U.S. at 339 (citations omitted). The burden of proving that the claims at issue are not suitable for arbitration is on the party resisting arbitration. *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

/ / /

/ / /

# III.

# DISCUSSION

### A. Assignee's Right to Compel Arbitration

Initially, Plaintiff argues he entered into an agreement to arbitrate his claims with Citibank, not Defendant. Plaintiff therefore contends Defendant cannot enforce the arbitration provision because it is not a party to the loan contracts. Defendant argues it has standing to enforce the arbitration provision as an assignee.

The Supreme Court has held "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Under both Nevada and New York laws, which govern the promissory notes, an arbitration provision is generally held to apply to the assignee of a contract. *See Lipman v. Haeuser Shellac Co., Inc.*, 289 N.Y. 76 (N.Y. 1942) ("[T]he arbitration clause is an integral part of the contract and may be availed of, not only by the original parties but also by assignees."); *see Easton Bus. Opp. v. Town Exec. Suites*, 126 Nev. 119, 125 (Nev. 2010) (a valid assignment "transfers the assignor's contract rights, leaving them in full force and effect as to the party charged.") (citation omitted). "[A]n assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." *First Fin. Bank v. Lane*, 339 P.3d 1289, 1293 (Nev. 2014) (citations and internal quotation marks omitted); *see Tanbro Fabrics Corp. v. Deering Milliken*, Inc., 318 N.Y.S.2d 764, 766 (N.Y. App. Div. 1971) ("[T]he assignee of a contract acquires the rights of the assignor therein and assumes its obligations including an agreement to arbitrate.").

The arbitration provision states, "You and I agree that either you or I may, without the other's consent, require that any Claims between you and me be submitted to mandatory, binding arbitration." (House Decl. ¶ 9, Exs. 5-A, 5-B, 5-

C.) The promissory notes define "You" as "Citibank, N.A., its successors, and *assigns*[.]" (*Id*.) (italics added). Defendant has provided a declaration of Timothy House, the Senior Vice President of Citibank, attesting Defendant's status as assignee. In the declaration, Mr. House states Citibank assigned "[t]he three loans co-signed by Nguyen … to Credit Control, LLC for collection on or about August 25, 2016." (*Id*. ¶ 10.) This statement was based on "either [Mr. House's] personal knowledge or review of Citibank's records and the attached documents." (*Id*. ¶ 2.) While the declaration states a legal conclusion regarding Defendant's status as an assignee, it provides sufficient facts to support that conclusion. *See Alarcon v. Vital Recovery Servs., Inc.*, No. 15CV992-LAB (KSC), 2016 WL 1162664, at *3 (S.D. Cal. Mar. 24, 2016). Therefore, Defendant, as an assignee, is entitled to enforce the arbitration provision in the promissory notes.

**B.     Delegation of Arbitrability**

Plaintiff argues the arbitration provision is unenforceable because it is invalid. Plaintiff also contends his claims are outside the scope of the arbitration provision. Defendant argues these threshold questions of arbitrability must be decided by an arbitrator, not the Court, because the arbitration provision delegates these "gateway" issues to an arbitrator.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. at 63, 68–69 (2010). These gateway issues can be expressly delegated to the arbitrator where "the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "Such [c]lear and unmistakable evidence of agreement to arbitrate arbitrability might include ... a course of conduct demonstrating assent ... or ... an express agreement to do so." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (citations and internal quotation marks omitted). For arbitration agreements under the FAA, "the court is to make

the arbitrability determination by applying the federal substantive law of arbitrability absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law."[3] *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (internal citations and quotation marks omitted).

The Ninth Circuit has held "language 'delegating to the arbitrators the authority to determine the validity or application of any of the provisions of the arbitration clause[ ] constitutes an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot*, 652 F.3d at 988). Here, the language of the arbitration provision evidences the parties' clear and unmistakable intent to delegate the threshold questions of arbitrability to an arbitrator. The relevant portion of the arbitration provision provides, "**Claims subject to Arbitration include, …** [c]laims relating to: … 3) the application, *enforceability or interpretation of* my Account, including *this arbitration provision*." (House Decl. ¶ 9, Exs. 5-A, 5-B, 5-C) (italics added). It further provides, "Any questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." (*Id.*)

The parties unambiguously agreed to submit to an arbitrator the questions of arbitrability, including the enforceability and the scope of the arbitration provision. *See Momot*, 652 F.3d at 988 (finding clear and unmistakable intent to have an arbitrator decide threshold questions of arbitrability based on the following language: "If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4*, and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding

---

[3] Federal law governs the arbitration question because the arbitration provision is covered by the FAA and the parties have not clearly and unmistakably designated that nonfederal arbitrability law applies. *See Brennan*, 796 F.3d at 1129.

arbitration."); *Mercado v. Sally Beauty Supply LLC*, No. 215CV02316KJMCKD, 2016 WL 3361883, at *3 (E.D. Cal. June 16, 2016) (holding parties agreed to arbitrate gateway issues because the arbitration agreement provides "the arbitrator shall decide 'any claim or controversy regarding the Agreement or any portion of the Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability, or formation, or whether the Agreement or any portion of the Agreement is void or voidable….'"). Accordingly, the Court finds the parties agreed to arbitrate the gateway issues.

### C. Unconscionability of Delegation Provision

Because the parties clearly and unmistakably delegated the questions of arbitrability to an arbitrator, "the only remaining question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable." *Brennan*, 796 F.3d at 1132 (citation omitted). When considering an unconscionability challenge to a delegation provision, the court must consider only arguments "specific to the delegation provision." *Rent–A–Ctr*., 561 U.S. at 73. In other words, in order for the court to address the unconscionability challenge, the nonmovant must "argue that the agreement to delegate to an arbitrator his unconscionability claim was *itself* unconscionable." *Brennan*, 796 F.3d at 1133 (citing *Rent–A–Center*, 561 U.S. at 74). Unless the nonmovant "challenge[s] the delegation provision specifically, [courts] must treat it as valid under § 2, and must enforce it under §§ 3 and 4 [of the FAA], leaving any challenge to the validity of the [Arbitration] Agreement as a whole for the arbitrator." *Rent–A–Ctr*., 561 U.S. at 72.

Here, Defendant asks the Court to enforce the delegation provision, which gives the arbitrator the exclusive authority to resolve claims "relating to … the application, enforceability or interpretation of … this arbitration provision." (House Decl. ¶ 9, Exs. 5-A, 5-B, 5-C.) Instead of challenging the specific delegation provision as unconscionable, Plaintiff challenges the validity of the entire arbitration provision. Plaintiff argues the arbitration provision is unenforceable because it is

procedurally and substantively unconscionable for the following reasons: (1) disparate bargaining power existed, (2) the language of the arbitration provision is inconspicuous, (3) the arbitration provision came as a surprise, (4) the arbitration provision lacks mutuality, and (5) the arbitration provision is permissive in nature. None of Plaintiff's unconscionability arguments is directed specifically at the delegation provision.  Because Plaintiff failed to "make any arguments specific to the delegation provision, and instead argued that the [Arbitration Clause] *as a whole* is unconscionable under state law, [the Court] need not consider that claim, because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question."  *Brennan*, 796 F.3d at 1133 (internal citations and quotations omitted).  Accordingly, the Court concludes the merits of Plaintiff's unconscionability arguments must be heard by an arbitrator.

### III.
### CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration and for stay of action pending arbitration is granted pursuant to §§ 3 and 4 of the FAA.  The Court stays the litigation to permit an arbitrator to decide the questions of arbitrability, and then, if permissible, to arbitrate the substantive claims.  Within 14 days of the completion of the arbitration proceedings, the parties shall jointly submit a report advising the Court of the outcome of the arbitration, and a request to dismiss the case or vacate the stay.

**IT IS SO ORDERED.**

Dated:  June 1, 2017

Hon. Dana M. Sabraw
United States District Judge